IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**PATRICIA G. DIBIASE,**
  Plaintiff,

v.              Civil Action No. 2:15-cv-07708

**CAROLYN W. COLVIN, Commissioner**
**Social Security Administration,**
  Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

  This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. By Order entered March 18, 2015, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 4). Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 7) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 8).

Background

  Patricia G. DiBiase (Claimant) filed application for disability insurance benefits (DIB) on December 27, 2011, alleging disability as of June 1, 2007. The claims were denied initially on July 3, 2012, and upon reconsideration on July 23, 2012. On August 23, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on January 14, 2014, in Charleston, West Virginia. By decision dated February 14, 2014, the ALJ

determined that Claimant was not entitled to benefits (Tr. at 14-24). The ALJ's decision became the final decision of the Commissioner on April 17, 2015, when the Appeals Council denied Claimant's request for review (Tr. at 1-6). In the Notice of Appeals Council Action, the Appeals Council (AC) stated:

> We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.
>
> \*\*\*
>
> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at Dr. Lerfald, reports dated February 20, 2014 through April 3, 2014 (5 pages); and Dr. Lakin, reports dated March 18, 2014 through April 18, 2014 (11 pages). The Administrative Law Judge decided your case through February 14, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 14, 2014.
>
> If you want us to consider whether you were disabled after February 14, 2014, you need to apply again.

The Order of Appeals Council dated April 17, 2015, stated:

> The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibits:
>
> | | |
> |---|---|
> | Exhibit 19E | Representative's letter dated March 14, 2014 (1 page) |
> | Exhibit 13F | Dr. Lerfald, reports dated January 20, 2014 through January 28, 2014 (1 page) |
> | Exhibit 14F | Dr. Lakin, reports dated August 21, 2013 through January 31, 2014 (3 pages) |

2

| | |
|---|---|
| Exhibit 15F | Dr. Tony Goudy, report dated January 27, 2014 (11 pages) |

Claimant filed the present action seeking judicial review of the administrative decision on June 15, 2015, pursuant to 42 U.S.C. § 405(g) (ECF No. 1).

## Standard of Review

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity,

considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in

> which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals

> Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of June 1, 2007, and meets the insured status requirements of the Social Security Act through March 31, 2014 (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of bipolar disorder (Tr. at 17). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. (*Id.*) The ALJ then found that Claimant has a residual functional capacity to perform a full range of work at all exertional levels[1] (Tr. at 19). The ALJ concluded that Claimant could not perform past relevant work but could perform work as a laundry worker, supermarket clerk and office assistant (Tr. at 23). On this basis, benefits were denied (Tr. at 24).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to

---

[1] The ALJ found that Claimant can perform a full range of work at all exertional levels but with the following nonexertional limitations: She could perform frequent balancing, stooping, kneeling and climbing ramps and stairs. She could occasionally crawl and climb ladders, ropes and scaffolds. She is able to perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes (Tr. at 19).

> support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on January 9, 1961 (Tr. at 63). She graduated from high school in Argentina. She also has a GED (Tr. at 33). She is married and has a daughter who was 11 years old on the date of the hearing. Claimant has a driver's license (Tr. at 39).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that new evidence from Tony R. Goudy, Ph.D., which was previously submitted to and entered by the Appeals Council, warrants changing the ALJ's decision (ECF No. 7). Claimant argues that the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence. Additionally, Claimant asserts the ALJ did not properly evaluate Claimant's credibility in light of her bipolar disorder. Defendant asserts that Dr. Goudy's opinion presents no basis for remand (ECF No. 8). Defendant avers that substantial evidence supports the ALJ's RFC

assessment and credibility analysis.

## Medical Record

This Court will only discuss, *infra,* relevant medical records pertaining to the issues of newly admitted evidence by the Appeals Council and the ALJ's review of all evidence.

## Discussion

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL

4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

Tony R. Goudy, Ph.D., a board certified psychologist, reviewed the medical evidence of record and performed a comprehensive psychological evaluation of DiBiase on January 27, 2014. (Tr. at 561-571). On February 12, 2014, Dr. Goudy provided a report of his findings and an opinion regarding the listing-level severity of DiBiase's bipolar disorder (Tr. at 566-567). Dr. Goudy also completed a Mental Residual Functional Capacity Assessment (Tr. at 568-571). Claimant asserts that "While the ALJ was promptly notified of the existence of this evidence, she declined to respond to DiBiase's attorney's requests to submit the evidence to the ALJ for consideration" (ECF No. 7).

Additional evidence will be considered by the Appeals Council if it is new and material and relates to the period on or before the ALJ hearing decision. See 20 C.F.R. §§ 404.970(b) and 416.1470(b). SSA has issued HALLEX 1-3-3-6 to clarify when additional evidence is new and material. According to the HALLEX, this means the evidence is:

1. Not part of the record as of the date of the ALJ decision;
2. Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
3. Relates to the period on or before the date of the hearing decision, meaning it is (a) dated before or on the date of the hearing decision, or (b) postdates the hearing decision but is reasonably related to the time period adjudicated at the hearing.

New evidence, which is first submitted to the Appeals Council, is part of the record which

9

goes to the district court for review. This is true whether the Appeals Council reviews the case or not. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 44 Soc. Sec. Rep. Serv. 248, Unempl. Ins. Rep. (CCH) (11th Cir. 1994).

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive

discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

When read in combination with the applicable regulation, *Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991),* reveals that a claimant need not show good cause when submitting new evidence to the Appeals Council:

> A claimant seeking a remand on the basis of new evidence under 42 U.S.C.A. § 405(g) (West 1983) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. There is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council.

*Wilkins*, 953 F.2d at 96 n.3; *see also* 20 C.F.R. § 416.1471(b) (2014). Instead, "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins*, 953 F.2d at 95-96 (quoting *Williams,* 905 F.2d at 216.) Evidence is new "if it is not duplicative or cumulative." *Id.* at 96 (citing *Williams*, 905 F.2d at 216). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)).

In the present case, the ALJ held:

> The undersigned has considered counsel's requests for medical expert interrogatories or testimony (Exhibit 17E and hearing). However, after thorough review of the evidence including the claimant's testimony, this case does not warrant an opinion from a medical expert, as the medical evidence is not complicated and there is no conflicting evidence or issues to suggest otherwise based on review and hearing testimony (Tr. at 14).

The ALJ held that Claimant has the severe impairment bipolar disorder, however, the impairment did not meet or medically equal the severity of Listing 12.04. To satisfy the "paragraph

11

B" criteria for Listing 12.04, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme.

The first area of the '"B" criteria, '"activities of daily living", includes adaptive activity such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using the telephone and directories, using the post office, etc. The ALJ held that Claimant has no restriction in activities of daily living. The ALJ found:

> The claimant reported she cares for her child and walks and does yoga for exercise. The claimant's function report noted that she performs all daily activities independently and performs household chores and meal preparation. In the second function report, she indicated she was no longer walking and doing yoga for exercise (Exhibits 5E, 9E and hearing testimony). In December 2013, she reported she enjoyed shopping, cooking and walking (Exhibit 12F) (Tr. at 18).

The second area of the "B" criteria, social functioning, refers to an individual's capacity to interact appropriately and communicate effectively with others. The ALJ held:

> The claimant reported she goes shopping, goes to the library and to her husband's place of employment. She reported she stays in touch with family and friends and indicated that she likes to have a social life every chance she gets. She noted no problems getting along with others. In the most recent report, she noted she does not socialize as much as in the past and preferred to stay home (Exhibit 5E, 9E and hearing testimony). (*Id.*)

The third criterion, concentration, persistence, or pace, refers to the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly found

in work settings. The ALJ held that Claimant has no difficulties in concentration, persistence or pace. The ALJ held:

> She indicated she manages the household finances and could follow spoken instructions well. She reported she could pay attention sixty minutes or so. She noted she does not handle stress or changes in routine well, indicating her move to West Virginia caused her to be home sick and depressed. In a later report, she indicated she uses the computer to access social media such as Facebook, but noted less ability to follow instructions (Exhibits 5E, 9E and hearing testimony).

As for episodes of decompensation, the ALJ found that Claimant has experienced one or two episodes of decompensation, each of extended duration. The ALJ stated "The evidence shows the claimant has had inpatient hospitalizations due to mental impairments (Exhibits 3F and 11F).

Section "C" of Listings 12.04 requires analysis of whether Claimant's mental illness is currently attenuated by medication or therapy but nevertheless has caused repeated episodes of decompensation of extended duration, inability to adjust to even minimal workplace changes due to residual disease process, or inability to function outside a highly supportive living arrangement for at least one year; or causes complete inability to function independently outside the area of one's home. The ALJ held:

> [T]he evidence fails to establish the presence of the "paragraph C" criteria. The record shows the claimant's mental impairments have not resulted in the inability to function outside one's home. The claimant worked for brief periods after the alleged onset date (Exhibit 6D). The claimant has reported going to the grocery store and library, taking her daughter to school, visiting with others, and attending ballet practice with her child (Exhibits 5E, 9E and hearing testimony). The claimant's mental impairment has not caused repeated episodes of decompensation, each of extended duration; resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation; or resulted in current history of one year or more years' inability to function outside a highly supportive

13

>living arrangement, with an indication of continued need for such an arrangement (Tr. at 18-19).

The ALJ relied on function reports dated May 25, 2009, Exhibit 5E, and June 4, 2012, Exhibit 9E (Tr. at 195-202, 221-228). Both reports found Claimant to not have any severe mental impairment. However, the reviewing medical opinions contained in these function reports did not include all the evidence in the record due to the ALJ's admission of additional medical records which are dated after June 4, 2012.

A medical residual functional capacity assessment was conducted on November 16, 2012, by Aroon Saunsillppongse, M.D., and entered into the record by the ALJ as Exhibit 7F (Tr. at 462-473). Dr. Saunsillppongse found that a residual functional capacity (RFC) assessment was necessary and that Claimant suffered from affective disorders under Listing 12.04 (Tr. at 462). Specifically, Dr. Saunsillppongse reported Claimant suffers from bipolar syndrome "with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)" (Tr. at 465). Dr. Saunsillppongse reported Claimant to have mild functional limitations in activities of daily living (Tr. at 470). Claimant's degree of functional limitation in maintaining social functioning and maintaining concentration, persistence or pace was reported as moderate. (*Id.*) Dr. Saunsillppongse found Claimant to have experienced one or two repeated episodes of decompensation, each of extended duration. Office notes from Claimant's treating psychiatrist dated December 3, 2013, admitted into evidence by the ALJ as Exhibit 12F, diagnosed Claimant as bipolar (Tr. at 555).

The ALJ did not consider or admit a Psychological Evaluation by Tony R. Goudy, Ph.D., performed on January 27, 2014, however, the AC admitted the Psychological Evaluation into the

14

records as Exhibit16F (Tr. at 561-571).  Dr. Goudy examined Claimant and reviewed treatment notes from Claimant's treating psychiatrist, Dr. Lerfald (Tr. at 562-563).  Dr. Goudy's diagnostic impressions reported Claimant to have bipolar I disorder with "recent episode depressed, severe with psychotic features" (Tr. at 566).  In discussing Claimant's bipolar disorder pursuant to Listing 12.04, Dr. Goudy stated:

> When taking the above into consideration, it is believed that [Claimant] suffers from the following B criteria functional limitations under her current psychiatric treatment:
>
> | | |
> |---|---|
> | Activities of Daily Living | mild impairment |
> | Social Functioning | mild to moderate impairment |
> | Concentration, Persistence and Pace | marked impairment |
> | Decompensation | psychiatric hospitalizations and 2011, 2009 and 2008 |
>
> Therefore, it does not appear that Ms. DiBiase meets a listing based solely on psychological factors relative to the B criteria, as she would appear to be somewhat stable under the psychiatric care of Dr. Lerfald, who has been successful in keeping Ms. DiBiase from experiencing further manic episodes and psychiatric hospitalizations.  However, I believe the increase in mental demands of return to work at this could likely cause Ms. DiBiase to rapidly deteriorate or even decompensate and experience additional manic episodes/psychiatric breaks.  Consequently, it is my opinion that she meets a listing under 12.04 C.2.. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate (Tr. at 567).

In a Mental Residual Functional Capacity Assessment by Dr. Goudy on February 12, 2014, Claimant was found to be markedly limited in: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform

15

activities with in a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to sustain an ordinary routine, the ability to complete normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 568-569).

Dr. Goudy's Mental RFC found Claimant to be moderately limited in: the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to work in coordination with or proximity to others without being distracted by them; the ability to interact appropriately with general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting (Tr. at 568-570).

Upon review, the Appeals Council admitted not only Dr. Goudy's report dated January 27, 2014, but also admitted into the record as Exhibit 13F, notes from Dr. Lerfald diagnosing Claimant with Bipolar Disorder (Tr. at 556). The office notes by Dr. Lerfald are dated January 20, 2014 and January 28, 2014, before the ALJ's decision. (*Id.*)

This Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the ALJ's findings. The additional records, marked as Exhibits 19E, 13F, 14F and 15F[2], were admitted into evidence by the Appeals Council. The evidence is new and material. As the new evidence was submitted to the AC, good cause is not required. A portion of the contents of the newly admitted evidence pertains directly to whether Claimant satisfies the criteria for Listing 12.04. The report by Dr. Goudy was based upon all evidence in the record, including evidence created after the reviewing physicians' function reports

---

[2] Dr. Goudy's report dated February 2, 2014, is mistakenly identified as Exhibit 15F in the AC's list of admitted additional evidence (Tr. at 5). Dr. Goudy's report is Exhibit 16F (Tr. at 560-571).

16

but before the ALJ's decision. Dr. Goudy's report and Dr. Lerfald's office notes were created before the ALJ's decision. There is a reasonable possibility that the newly admitted evidence would have changed the outcome of the ALJ's decision. Therefore, the ALJ's decision is not supported by substantial evidence as he has not reviewed the record as a whole.

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that the ALJ's decision is not supported by substantial evidence of record. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand. The undersigned respectfully recommends that the presiding District Judge remand this matter for further analysis and consideration.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (ECF No. 7) to the extent Plaintiff seeks remand, **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.

Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  August 18, 2016

_____
Dwane L. Tinsley
United States Magistrate Judge